**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STEPHEN DOUGLAS McCASKILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 13 C 3169** |
| | ) | |
| **DR. MUHAMED MANSOUR, NURSE** | ) | **Judge Rebecca R. Pallmeyer** |
| **JEFFERSON, OFFICER RAMOS, and** | ) | |
| **OFFICER KEATING,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephen Douglas McCaskill, a pretrial detainee at the Cook County Jail, brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Dr. Muhammad Mansour, Nurse Jefferson, and Jail Officers Ramos and Keating. Plaintiff alleged that Defendants were deliberately indifferent to Plaintiff's complaints about his cellmate's defecating and urinating on himself and the floor of the cell and to Plaintiff's requests for cleaning supplies. Defendants have moved for summary judgment pursuant to FED. R. CIV. P. 56(a), arguing that Plaintiff did not exhaust administrative remedies in accordance with 42 U.S.C. § 1997e(a) before filing this suit. For the following reasons, the court concludes that there are no disputes of material fact on this defense and that no hearing is necessary. Defendants' motion is granted, and this case is dismissed without prejudice.

## FACTS

Because Plaintiff is a *pro se* litigant, Defendants served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2 [43]. The notice explains the procedure for responding to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1, and spells out the consequences of failing to do so properly.

Plaintiff responded to the motion with (1) a memorandum [48][1] and (2) a response to three of the factual assertions in Defendants' Rule 56.1 Statement of Material Facts (hereinafter, "Defs.' 56.1") [49]. Specifically, Plaintiff objected to paragraphs 2, 3, and 17 of Defendants' Rule 56.1 statement; even with respect to those paragraphs, Plaintiff made no specific reference to any evidentiary materials. And Plaintiff has declined to submit his own statement of facts that would require the denial of the motion—this despite the clear direction given in the Local Rule 56.2 notice and the fact that Plaintiff has filed more than a dozen civil cases and has been advised of the requirements in the past. To the extent the facts as presented by Defendants are supported in the record, the court adopts those statements as true. *See* L.R. 56.1(b)(3)(C); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Though the court is not required to scour the record or piece together Plaintiff's arguments for him, *see Diadenko v. Folino*, 741 F.3d 751, 757 (7th Cir. 2013); *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989), his failure to comply with Local Rule 56.1, does not result in an automatic grant of summary judgment in favor of Defendants. The court has reviewed the record and construes the evidence presented in the light most favorable to Plaintiff as the non-moving party. *See Keeton*, 667 F.3d at 884.

Plaintiff Stephen Douglas McCaskill (hereinafter, "Plaintiff" or "McCaskill") filed this suit in April 2013. (Complaint [1].) During the relevant time, Dr. Mansour was employed by the Cook County Health and Hospitals Systems and worked as a physician in Division 10 of the Cook County Jail. (Defs.' 56.1 Stmt. [43] ¶ 2.) Nurse Jefferson was also employed by the Cook

---

[1] Plaintiff has more than a dozen lawsuits currently pending. Three of the cases were filed on April 26, 2013. Cook County Defendants filed motions for summary judgment in all three cases in September 2014, and Plaintiff submitted the same response to each of the motions: *McCaskill v. Manilla*, No. 13 C 3166 (N.D. Ill.) [Doc. No. 47]; *McCaskill v. Cook County*, No. 13 C 3167 (N.D. Ill.) [Doc. No. 41]; and this case, *McCaskill v. Cook County*, No. 13 C 3169 (N.D. Ill.) [Doc. No. 48]. The response generally discusses his claims in each of the three cases. The portion of the response applicable to this case appears at the bottom of page two, where Plaintiff states that he was required to clean human waste for 30 days with his bare hands and contracted a rash. (McCaskill Response to Motion for Summary Judgment [48] at 2-3.)

County Health and Hospitals System and worked in Division 10. (*Id.* at ¶ 3.) Officers Ramos and Keating also worked in Division 10. (*Id.* at ¶ 4.)

Plaintiff's claims about his incontinent cellmate began in December of 2012 and continued into early January 2013. (*Id.* at ¶ 5.) Plaintiff has acknowledged that he received the jail's Inmate Rules and Regulations years ago, in 2003, and that copies of the Rules and Regulations are also available in the jail's dayroom. (*Id.* at ¶¶ 6, 7.) Plaintiff is familiar with the grievance process. (*Id.* at ¶ 8.) He understands that the process requires an inmate to write his grievance and submit it to a social worker, who is responsible to review the grievance and send it to the proper person. (*Id.* at ¶ 9.) In some instances, Plaintiff testified, a grievance is processed as a request; if that happens, and the inmate is not satisfied with the response, the inmate is expected to resubmit it. (*Id.* at ¶¶ 9-10.) An inmate not satisfied with the disposition of a grievance has 14 days in which to appeal. (*Id.* at ¶ 11.)

John Mueller is employed as a Deputy Director of Inmate Services. (*Id.* at ¶ 12.) As part of his duties, Mueller manages the inmate grievance process. (*Id.* at ¶ 13.) In an affidavit, Mueller explained that the Cook County Department of Corrections grievance process is available to all inmates, including Plaintiff, at all times. (*Id.* at ¶ 14, citing Mueller Affidavit, Exhibit C to Defs.' 56.1.) Sheriff's Order 11.14.5.0, "Detainee Grievance Procedure," has governed the grievance procedure since July of 2011. (*Id.* at ¶ 15.) As set forth in that document, an inmate is required to file a grievance within 15 days of the offense and, if he is unsatisfied by the response, must file an appeal within 14 days of receiving that response. (*Id.* at ¶ 16.) Mr. Mueller explained that a Correctional Rehabilitation Worker ("CRW") works with Inmate Services and is assigned to attend to inmates' requests and grievances. (*Id.* at ¶ 17.) Inmates are free to submit grievances on a form that includes carbon copies; the CRW will provide the inmate with a copy of his grievance. *Id.* at ¶ 18.) If no forms are available, the inmate may submit a grievance on a sheet of loose leaf paper. (*Id.*)

After a CRW makes rounds to collect inmate grievances and requests, the CRW reviews each submission and determines whether it should be processed as a grievance or as a request. (*Id.* at ¶ 19.) Submissions processed as requests include such issues as a desire to attend the barbershop, to receive a change of clothes or sheets, to obtain checks from the inmate's commissary account, or to receive copies of records. (*Id.* at ¶ 20.) Submissions processed as grievances include complaints about staff misconduct, incidents of excessive force, and any health-related complaint. (*Id.* at ¶ 21.) When a submission is determined to be a grievance, it is assigned a number and entered into a jail record-keeping system. (*Id.* at ¶ 22.) If the grievance involves a health-related issue, it is forwarded to Cermak Health Services, where it is reviewed and addressed by healthcare staff. (*Id.* at ¶ 23.) As Mr. Mueller pointed out, routing a health-related grievance to Cermak is necessary to ensure compliance with HIPAA's privacy requirements, as jail staff members are not allowed to view inmate medical records. (*Id.*) After a health-related grievance is forwarded to Cermak, the CRW waits for a response. (*Id.* at ¶ 24.) Then, on receipt of the grievance response from Cermak, the CRW delivers it to the inmate and informs him that, if he is not satisfied with the response, he must appeal it to exhaust administrative remedies. (*Id.* at ¶ 25.) The grievance form includes a notice that in order for the inmate to appeal the grievance and exhaust his administrative remedies, he must submit an appeal within 14 days of receipt of the grievance. (*Id.* at ¶ 26.) According to Mueller, the Cook County Jail saw a dramatic increase in inmate grievances in 2011 and 2012, which slowed the process of review of grievances. (*Id.* at ¶ 27.)

In connection with this motion for summary judgment, staff performed a thorough search for all grievances and requests submitted by Plaintiff using his inmate number. Plaintiff did file numerous grievance and requests, addressing a variety of issues, including cell conditions, staff misconduct, and requests for library access. (*Id.* at ¶ 28.) Mueller's search revealed that Plaintiff filed six grievances directly relating to the cell conditions that are at issue in his complaint in this lawsuit. (*Id.* at ¶¶ 29,30.) Those grievances were filed on consecutive days:

December 31, 2012; January 1, 2013; January 2, 2013; January 3, 2013; January 4, 2013; and January 5, 2013. In each of these grievances, Plaintiff asserted that his cellmate was defecating and urinating on himself and on the floor of the cell, and that Plaintiff had to clean it up, thus exposing him to Hepatitis C. (*Id.* at ¶ 30.) Though each of the six grievances referred to this same issue with Plaintiff's cellmate, they named different officers or medical staff as being responsible for requiring Plaintiff to share a cell with the incontinent inmate, and requested that the responsible person be fired. (*Id.*, citing copies of grievances, [43-3] attached to Mueller Affidavit.) All six grievances were assigned control number 13x2016. (*Id.*)

On January 23, 2013, a member of the Division 10 superintendent's staff responded to the six grievances in writing: a notation on the grievance form confirmed that Plaintiff's cellmate had been transferred to Cermak Hospital on January 8, 2013. (*Id.* at ¶ 31, citing grievances attached to Mueller Affidavit [43-3], at 16.) The response made no mention of discipline, if any, imposed on the individuals against whom Plaintiff directed his grievances. Plaintiff signed the form, acknowledging that he received the grievance response on February 3, 2013 (*id.*), and he admits that he did not appeal this response. (*Id.*; Plaintiff's Dep., Exhibit B to Def.'s 56.1 at 174.)

On January 17, 2013, Plaintiff submitted another grievance form, asking that he be provided with cleaning supplies. This submission was processed as a request rather than a grievance, and a Division 10 superintendent staff member responded by advising Plaintiff that cleaning supplies were available on request to Plaintiff's tier officer. (*Id.* at ¶ 33.) Because this submission was labeled a request, no appeal was available from the response. (*Id.*) Plaintiff understood that if he wanted his request for cleaning supplies to be considered a grievance, he had to resubmit it after receiving the initial response. (*Id.* at ¶¶ 10, 33.) He did not renew the request.

As previously noted, in his response to the motion for summary judgment [49], Plaintiff objected to only three of the above statements. Plaintiff states that inmates in his division have

signed affidavits swearing to the unsanitary and unsafe living condition he was forced to endure. (*Id.*, objecting to paragraphs 2 and 3 of Defs.' 56.1 (in which Defendants assert only that Dr. Mansour and Nurse Jefferson worked in Division 10).) Plaintiff further states that a CRW made rounds at most twice a week, not daily, as Defendants have asserted. (*Id.*, objecting to paragraph 17 of Defs.' 56.1.) Plaintiff's response cites no materials in the record, nor has he responded to Defendants' assertion that Plaintiff did not appeal from the response to his grievances.

## ANALYSIS

The Prison Litigation Reform Act requires that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other federal law, until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Under the exhaustion requirement, no prisoner "is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted); *see also Kincaid v. Sangamon County*, 435 Fed. Appx. 533, 536-537, 2011 WL 2036441 at *3 (7th Cir. 2011) (recognizing that § 1997e(a)'s exhaustion requirement applies to jail, as well prison, grievance procedures). Even where the prisoner seeks relief that was unavailable in the administrative system, such as money damages, or believes the effort would be futile, he must first exhaust available administrative remedies. *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006).

Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Proper use of an institutional grievance system requires the inmate "to file complaints and appeals in the place, and at the time the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *Dole v. Chandler*, 438 F.3d at 809; *see also Woodford*, 548 U.S. at 90. "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to

consider the grievance." *Pavey v. Conley*, 663 F.3d 899, 905-06 (7th Cir. 2011). Such an opportunity exists only if "the grievant complies with the system's critical procedural rules." *Id.*

Additionally, an inmate must exhaust all levels of available administrative review prior to bringing suit. *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002), citing *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). He is not free to file suit and complete the exhaustion process after the case is pending. *Id.*

In the instant case, there is no dispute that Plaintiff filed grievances about being celled with an incontinent inmate. His grievances, all of which referred to the same issue, were grouped together and assigned a single grievance number. And Plaintiff received a response: On January 23, prison officials noted that Plaintiff's cellmate had been moved from the cell days earlier, just three days after Plaintiff's last grievance. Plaintiff may not have been satisfied by that response, as it did not afford the relief he had requested (the discharge of all jail officials responsible for housing Plaintiff with the incontinent cellmate). But he did not appeal from it. Plaintiff's failure "to file . . . [an] appeal[] in the place, and at the time the prison's administrative rules require" means that he did not "us[e] all steps that the agency holds out" and did not fully exhaust available administrative remedies *Pozo*, 286 F.3d at 1024, 1025. His failure to fully exhaust administrative remedies deprived the jail's grievance system of "a fair opportunity to consider the grievance." *Pavey*, 663 F.3d at 905-06. Similarly, the submission he made later was deemed a request, and also drew a response: directions for obtaining cleaning supplies. If Plaintiff was dissatisfied by that request, he understood the need to re-submit it, but failed to do so.

## CONCLUSION

Plaintiff was housed briefly in deplorable circumstances, with an incontinent cellmate. He filed several grievances, and the cellmate was removed. Perhaps he recognized that the situation had been resolved; nonetheless, in order to pursue his case in federal court, he was required to pursue his grievance through the appeals process. If the directions he received for

obtaining cleaning supplies were inadequate, he was required to re-submit his request in order to challenge the denial of such supplies.  As Plaintiff failed to pursue the grievance process to its conclusion, the court dismisses his case without prejudice.  Defendants' motion for summary judgment [42] is granted.

ENTER:

Dated:  February 6, 2015

REBECCA R. PALLMEYER
United States District Judge